**UNITED STATES of America**

**v.**

**BEECH–NUT NUTRITION CORPORATION, Niels L. Hoyvald, John F. Lavery, Zeev Kaplansky, Raymond H. Wells, Nina B. Williamson, South Orange Express, Inc., Danny A. Shaeffer, Defendants.**

**No. 86 CR 715.**

United States District Court, E.D. New York.

May 11, 1987.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. by Thomas H. Roche, Asst. U.S. Atty., Brooklyn, N.Y., and Office of Consumer Litigation, U.S. Dept. of Justice, Washington, D.C. by John R. Fleder, Director, Kenneth L. Jost, Sharon I. Kurn, for U.S. (Stephen D. Terman, Office of the Chief Counsel, Food and Drug Admin., Rockville, Md., of counsel).

Schulte Roth & Zabel, by John S. Martin, Jr., Stacey J. Moritz, Philip G. Barber, New York City, for defendant Beech-Nut.

Kostelanetz & Ritholz by Lawrence S. Feld, New York City, and Williams & Connolly, by Richard M. Cooper, Brendan V. Sullivan, Jr., Barry S. Simon, Jeanne M. Rowzee, Washington, D.C., for defendant Hoyvald.

Steven Kimelman, New York City, for defendant Lavery.

Obermaier, Morvillo & Abramowitz by Elkan Abramowitz, New York City, for defendant Kaplansky.

Emanuel R. Gold & Associates by Emanuel R. Gold, New York City, for defendant Wells.

Thomas J. Concannon, The Legal Aid Society, Brooklyn, N.Y., for defendant Williamson.

Gotlin, Jaffe & LaBush by Gerald LaBush, New York City, for defendant South Orange Exp.

Ira London, Vivian Shevitz, Brooklyn, N.Y. and Irwin H. Schwartz, Seattle, Wash., for defendant Shaeffer.

## MEMORANDUM AND ORDER

PLATT, District Judge.

In this straightforward criminal case charging defendants with misbranding and adulterating apple juice products, defense counsel, in a brilliant display of imaginative creativity, have attempted in a series of pre-trial motions to convert rather simple allegations contained in the indictment herein into a complex maze of confusing theories based in large part upon their own conceptions of viable defenses. In order to replace everything into proper perspective we must summarize the indictment and analyze their multiple motions separately.

*The Indictment*

On November 5, 1986, the Government filed a 470 count indictment against the following eight defendants: the Beech-Nut Corporation, Niels L. Hoyvald, John F. Lavery, Zeev Kaplansky, Raymond H. Wells, Nina B. Williamson, South Orange Express, Inc. ("SOX") and Danny A. Shaeffer. During the time relevant to the indictment, Hoyvald was the president of the Beech-Nut Corporation and Lavery its vice-president. Indictment, ¶¶ 3, 4. Kaplansky, Shaeffer and Wells conducted business under the name Nameco Trading Co. Wells also owned Food Complex Co., Inc. ("Food Complex"), which he operated with Williamson, an officer of the company. The Beech-Nut Corporation, Nameco Trading Co. and Food Complex manufactured, processed, labeled, held, shipped and sold foods in interstate commerce. SOX was a New Jersey corporation engaged in the business of labeling, holding and shipping foods in interstate commerce. *Id.*, ¶ 8.

Count One alleges that all eight defendants, with intent to defraud, conspired to introduce or deliver for introduction or cause the delivery or introduction of adulterated and misbranded apple juice product into interstate commerce, in violation of the Federal Food, Drug and Cosmetic Act ("FFDCA"), Title 21, United States Code, Sections 331(a), 331(k) and 333(b). The apple juice products were allegedly adulterated within the meaning of 21 U.S.C. §§ 342(b)(1) and 342(b)(2) and misbranded within the meaning of 21 U.S.C.

§§ 343(a)(1), 343(b), 343(i)(2) and 343(k). As part of the conspiracy defendants Kaplansky, Wells, Williamson, SOX and Shaeffer ("Suppliers") allegedly sold adulterated and misbranded apple juice *concentrate* to defendants Beech-Nut Corporation, Hoyvald and Lavery ("Beech-Nut defendants"). In furtherance of the conspiracy the Beech-Nut defendants, with intent to defraud, introduced into interstate commerce or delivered for introduction adulterated and misbranded *apple juice* and *juices* containing in part apple juice. The products labeled apple juice and apple juice concentrate contained primarily beet sugar, malic acid, apple flavor, caramel color, corn syrup and very little, if any, apple juice or apple juice concentrate. Indictment, ¶¶ 14, 15.

Counts Two through Twenty-one charge all the defendants with engaging in a scheme to defraud in violation of the mail fraud statute, Title 18, United States Code, Section 1341. Indictment, ¶¶ 18, 26. As part of the scheme Beech-Nut defendants purchased apple juice concentrate from Kaplansky and Food Complex. *Id.*, ¶ 19. When the Beech-Nut Corporation wanted to buy foods labeled as *apple juice concentrate*, an employee of the Corporation would notify Kaplansky's broker. *Id.*, ¶ 24. Shaeffer and Kaplansky would arrange to have a mixture of beet sugar, malic acid and apple flavor prepared and delivered to SOX. *Id.*, ¶ 20. SOX would then stencil the words "apple concentrate" on the drums of flavored syrup. *Id.*, ¶ 21. When the Corporation wanted to purchase foods labeled as *pure apple juice concentrate*, it would notify Food Complex. Food Complex's owner and officer, defendant Wells, and defendant Wiliamson, a Food Complex officer, would then purchase beet sugar, malic acid, caramel color and apple flavor and mix the ingredients at the Food Complex plant and thereafter misrepresent the product. *Id.*, ¶ 22. In furtherance of the scheme to defraud defendants allegedly used the United States mails on 20 separate occasions.

Counts Twenty-two through Four Hundred Fifty allege that Beech-Nut defendants, Wells and Kaplansky, with intent to defraud, introduced or delivered for intro-duction or caused the delivery or introduction of, within the Eastern District of New York and elsewhere, adulterated and misbranded apple juice and apple juice products into interstate commerce.

Finally, Counts Four Hundred Fifty-one through Four Hundred Seventy charge Supplier defendants with selling adulterated and misbranded foods labeled as apple juice concentrate to customers other than the Beech-Nut defendants.

Defendants have filed the following motions: (1) motions to dismiss Count One for alleging multiple conspiracies; (2) motions to dismiss Counts Two through Twenty-one on the grounds that they allege separate schemes to defraud; (3) motions to dismiss Counts Twenty-two through Four Hundred Fifty for lack of venue; (4) motions to compel the Government to elect between multiplicitous counts; (5) motions to sever on the grounds of improper or prejudicial joinder; (6) motions to dismiss Counts Twenty-two through Four Hundred Fifty and Counts Four, Five, Seven, Eight, Nine and Fifteen as constitutionally vague and failing to state an offense; (7) a motion to dismiss the indictment on the basis of grand jury abuse; (8) discovery motions; and (9) motions for a bill of particulars.

## I. *Conspiracy*

Defendants move to dismiss Count One on the grounds that it improperly alleges multiple conspiracies and fails to specify the object of the conspiracy.

First, defendants claim that Count One alleges two separate conspiracies: one conspiracy among Supplier defendants to introduce adulterated and misbranded apple juice *concentrate* into interstate commerce with intent to defraud and a second, subsequent, conspiracy among Beech-Nut defendants to ignore the adulterated nature of the concentrate purchased from Suppliers and with intent to defraud introduce into interstate commerce adulterated and misbranded *apple juice*. The Beech-Nut defendants see themselves as the unknowing victims of the fraud perpetuated by Suppliers. They argue that as a matter of logic victims and perpetrators cannot con-

spire. Therefore, since they could not conspire with Suppliers, Count One cannot allege a single conspiracy. Since Count One cannot allege a single conspiracy, they conclude that Count One must allege multiple conspiracies.

■ Defendants' second argument asserts that Count One should be dismissed for failure to specify the object of the conspiracy. According to Beech-Nut defendants, in a conspiracy to violate the FFDCA, defendants must agree to adulterate or misbrand a specific product. Therefore, Count One should specify whether defendants agreed to adulterate and misbrand either apple *juice* or apple juice *concentrate.*

An indictment must allege the essential elements of the offense charged. *See Wong Tai v. United States*, 273 U.S. 77, 80–81, 47 S.Ct. 300, 301–302, 71 L.Ed. 545 (1927). Thus, an indictment charging defendants with conspiracy must allege an agreement, *United States v. Alessi*, 638 F.2d 466, 473 (2d Cir.1980), and some object of the conspiracy, *United States v. Rosenblatt*, 554 F.2d 36, 38 (2d Cir.1977). An indictment alleges a single conspiracy if it charges defendants with agreeing to participate in one or more common criminal ventures. *See Alessi*, 638 F.2d at 473 (to prove a single conspiracy, the Government must show that the defendants knowingly participated in a common criminal venture). The conspiracy is the crime, however diverse its objects. *Braverman v. United States*, 317 U.S. 49, 54, 63 S.Ct. 99, 102, 87 L.Ed. 23

(1942); *United States v. Murray*, 618 F.2d 892, 896 (2d Cir.1980).

By charging defendants with agreeing to violate the FFDCA, 21 U.S.C. §§ 331(a), (k) & 333(b), Count One alleges a single conspiracy with multiple objects.[1] The acts violating Title 21, United States Code, Sections 331(a),[2] (k),[3] and 333(b)[4] represent the objects of the alleged conspiracy. These objects include introducing or delivering for introduction or causing the introduction or delivery into interstate commerce, of adulterated or misbranded food, 21 U.S.C. § 331(a); altering in whole or in part the labeling of food while it is held for sale, after shipment in interstate commerce, 21 U.S.C. § 331(k); and doing anything to a food while it is held for sale after shipment in interstate commerce which would result in the food being adulterated or misbranded. 21 U.S.C. § 331(k). In each case defendants allegedly acted with intent to defraud or mislead in violation of section 333(b). 21 U.S.C. § 333(b).

Whether the evidence adduced at trial supports the single conspiracy alleged in Count One is a question which must be resolved at trial. *Alessi*, 638 F.2d at 462. Accordingly, defendants' motions must be denied.

## II. *Separate Schemes to Defraud*

The Beech-Nut defendants, joined by Kaplansky and Williamson, move to dismiss the mail fraud counts (Counts Two through Twenty-one) on the grounds that they allege separate schemes to defraud.

---

**1.** Paragraph 10 of the indictment alleges the following:

From on or about and between the 1st day of October 1978, to the 31st day of March 1983, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants, BEECH–NUT, NIELS L. HOYVALD, JOHN F. LAVERY, ZEEV KAPLANSKY, RAYMOND H. WELLS, NINA B. WILLIAMSON, SOUTH ORANGE EXPRESS, INC., and DANNY A. SHAEFFER, and others known and unknown to the Grand Jury, did unlawfully, willfully, and knowingly, combine, conspire, confederate, and agree to violate the Federal Food, Drug, and Cosmetic Act, Title 21, United States Code, Sections 331(a) and (k), and 333(b).

**2.** Section 331(a) provides in part:

The following acts and causing thereof are prohibited:

(a) The introduction or delivery for introduction into interstate commerce of any food ... that is adulterated or misbranded.

**3.** Section 331(k) provides in part:

(k) The alteration ... of the whole or any part of the labeling of, or the doing of any other act with respect to, a food ... if such act is done while such article is held for sale ... after shipment in interstate commerce and results in such article being adulterated or misbranded.

**4.** Section 333(b) provides in part:

(b) ... If any person ... commits such a violation [of a provision of § 331] with the intent to defraud or mislead....

Beech-Nut defendants claim that Counts Two through Twenty-one allege two separate schemes to defraud: one scheme among Supplier defendants to defraud purchasers of apple juice *concentrate* and a separate scheme among Beech-Nut defendants to defraud buyers of apple *juice*. Beech-Nut defendants reiterate their "victim" theory. In an argument parallel to their dual conspiracy argument, Beech-Nut defendants assert that any alleged common scheme to defraud between themselves and Suppliers would result in a scheme to defraud themselves. Therefore, since the existence of a common scheme is logically impossible, Counts Two through Twenty-one must allege separate schemes to defraud.

■ Again, an indictment must allege the essential elements of the offense charged. *See Wong Tai*, 273 U.S. at 80–81, 47 S.Ct. at 301–302. To sustain a mail fraud count, 18 U.S.C. § 1341, the Government must charge that the defendants participated in a single scheme to defraud and knowingly used the mails to further the scheme. *See United States v. Gelb*, 700 F.2d 875, 879 (2d Cir.), *cert. denied*, 464 U.S. 853, 104 S.Ct. 167, 78 L.Ed.2d 152 (1983); 2 Devitt & Blackmar, *Federal Jury Practice & Instructions*, § 47.05 at 657 (3rd ed. Supp.1986).

■ Counts Two through Twenty-one allege that all eight defendants engaged in a joint venture to defraud purchasers of apple juice products.[5] All eight defendants intentionally devised a scheme "and artifice to defraud and to obtain money ... by false ... representation ... from buyers of foods labeled ... apple juice concentrate, apple juice and juices containing, in part, apple juice." Indictment, ¶ 18. In furtherance of the scheme, defendants knowingly, *Id.*, ¶ 26, used the United States Postal Service on 20 separate occasions to mail purchase orders, delivery orders and purchase order alterations. *Id.*, ¶¶ 18–26. Hence this indictment properly alleges a single scheme to defraud where the different co-schemers played different roles. *See Mansfield v. United States*, 155 F.2d 952, 953 (5th Cir.), *cert. denied*, 329 U.S. 792, 67 S.Ct. 364, 91 L.Ed. 678 (1946).

The essential elements of mail fraud have been alleged. *Gelb*, 700 F.2d at 879. Therefore, as with defendants' motions to dismiss Count One, defendants' motions to dismiss Counts Two through Twenty-one must be denied.

## III. *Venue*

The Beech-Nut defendants, joined by defendants Kaplansky and Wells, move to dismiss Counts Twenty-two through Four Hundred Fifty for lack of venue. Counts Twenty-two through Four Hundred Fifty charge that the Beech-Nut defendants and Kaplansky and Wells, with intent to defraud, introduced or delivered for introduction or caused the delivery or introduction, into interstate commerce of adulterated apple juice products (Counts Twenty-two through Two Hundred Sixty), misbranded apple juice (Counts Two Hundred Thirty-seven through Four Hundred Four), and misbranded apple juice products (Counts Four Hundred Five through Four Hundred Fifty), in violation of Title 21, United States Code, Section 331(a). These defendants are also charged with aiding and abetting the FFDCA violations under Title 18, United States Code, Section 2.

Defendants' argument assumes the existence of separate conspiracies and separate schemes to defraud and focuses on the prohibited act of introduction. Beech-Nut defendants claim that in § 331(a) offenses, 21 U.S.C. § 331(a), venue is governed by

---

5. Paragraph 18 of the indictment alleges the following:

From on or about and between the 1st day of October 1978, to the 31st day of March 1983, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants BEECH–NUT, NIELS L. HOYVALD, JOHN F. LAVERY, ZEEV KAPLANSKY, RAYMOND H. WELLS, NINA B. WILLIAMSON, SOUTH ORANGE EXPRESS, INC., and DANNY A. SHAEFFER

devised and intended to devise a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations, and promises, from buyers of foods labeled as, and otherwise represented to be, apple juice concentrate, apple juice and juices containing, in part, apple juice, well knowing that said pretenses, representations, and promises would be and were false and fraudulent when made.

Rule 18 of the Federal Rules of Criminal Procedure. Therefore, venue in this case lies either in the district where the adulterated product was introduced or delivered for introduction or in the district where the defendants acted to cause such introduction or delivery. The Beech-Nut defendants argue that they are charged only with introducing apple juice into interstate commerce, not apple juice concentrate. Therefore, venue as to them lies in the district where the apple juice, not the apple juice concentrate, was introduced into interstate commerce. They claim they never shipped apple juice from this district.

■ Venue in criminal cases is governed by Rule 18 unless a statute otherwise provides for specific venue. Fed.R.Crim.P. 18. A section 331(a) offense, 21 U.S.C. § 331(a), is a continuous crime within the meaning of 18 U.S.C. § 3237(a). The continuous crime statute has its own venue provision and, therefore, Rule 18 does not apply to section 331(a) offenses.

Section 3237 defines continuous crimes as, *inter alia,* offenses involving transportation in interstate or foreign commerce. 18 U.S.C. § 3237. The operative word in section 3237 is "involving", the term to involve being defined as "to include as a necessary circumstance." The American College Dictionary 643 (1970). Any offense which includes transportation as a necessary circumstance of the offense is a continuous crime within the meaning of 18 U.S.C. § 3237(a). As a result, continuous crimes are not only offenses of actual interstate transportation but include offenses of receipt from,[6] and introduction into, interstate commerce.[7] *See also United States v. Cattle King Packing Co., Inc.,* 793 F.2d 232, 239 n. 4 (10th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 573, 93 L.Ed.2d 577 (1986) (Title 21, United States Code, Section 610(b) forbidding the sale, transportation, offer for sale or transportation, or receipt from transportation of adulterated meat,

was analyzed as a continuous crime within the meaning of 18 U.S.C. § 3237).

Section 331(a) prohibits the introduction or delivery for introduction, or causing the delivery or introduction into interstate commerce of adulterated or misbranded foods. 21 U.S.C. § 331(a). Tangible items such as adulterated and misbranded foods cannot be introduced or delivered for introduction into interstate commerce without some form of transportation. Therefore, since transportation is a necessary circumstance of a section 331(a) offense, a section 331(a) violation is a continuous crime within the meaning of 18 U.S.C. § 3237.

Venue for a continuous crime lies in any district from, through, or into which the prohibited interstate commerce moves. *See* 18 U.S.C. § 3237(a). Venue, under section 3237, includes the entire area through which the force propelled by defendants operates. *United States v. Cores,* 356 U.S. 405, 408, 78 S.Ct. 875, 877–78, 2 L.Ed.2d 873 (1958).

■ Having determined that a section 331(a) offense is a continuous crime, the Court must determine whether venue lies in this district. Adulterated and misbranded apple juice concentrate was allegedly manufactured in this district by Food Complex. Indictment, ¶ 16. When the Beech-Nut Corporation wanted foods labeled as apple juice concentrate, it would notify Kaplansky's broker located in this district. *Id.,* ¶¶ 24, 5. Defendants allegedly shipped apple juice concentrate from this district and caused the introduction or delivery for introduction into interstate commerce of adulterated apple juice from this district. Given these allegations, it is beyond dispute that forces propelled by the defendants operated in this district. *See United States v. Sullivan,* 332 U.S. 689, 696, 68 S.Ct. 331, 335–36, 92 L.Ed. 297 (1948). Therefore, under section 3237(a) venue is proper in this district and defendants' motions are denied.[8]

---

**6.** *E.g.,* 18 U.S.C. §§ 2313, 2315, 2317 and 21 U.S.C. § 331(c).

**7.** *E.g.,* 21 U.S.C. § 331(a).

**8.** Our finding that section 331 is a continuous crime is further supported by the interstate character of the FFDCA. The Act was not

meant to protect the commerce of food in one discrete geographical area. The FFDCA is an overall scheme designed to protect the interstate flow of goods from the moment of introduction into interstate commerce until the moment of delivery to the ultimate customer. *United States*

## IV. *Multiplicity*

Defendants move to compel election between alleged multiplicitous counts.[9] The indictment identifies numerous shipments of apple juice products introduced into interstate commerce. For each shipment, the named defendants are charged with two counts under the same statute,[10] one count for violating section 331(a) by introducing into interstate commerce adulterated foods as defined by 21 U.S.C. §§ 342(b)(1) and 342(b)(2) and another count for violating § 331(a) by introducing into interstate commerce misbranded food as defined by 21 U.S.C. §§ 343(a)(1), 343(b), 343(i)(2) and 343(k).

Defendants' argument centers on the act of introduction into interstate commerce. They claim, in somewhat of an oxymoronic fashion, that introducing adulterated foods and introducing misbranded foods in interstate commerce require the same criminal conduct. Therefore, a single act of introduction into interstate commerce of foods which are adulterated, misbranded, or both, constitutes a single section 331(a) offense. They conclude that, by charging separate section 331(a) violations for each act of introduction, the indictment is multiplicitous.

The Beech-Nut defendants also argue that Counts One Hundred Nineteen through One Hundred Twenty-seven and Three Hundred Nine through Three Hundred Seventeen are multiplicitous in another respect.[11] They claim that although the shipments at issue in these counts were separate and occurred on different days, the shipments were part of a single "continuous" act of introduction.

In light of the inevitable prejudice created by a 470 count indictment, defendants request that the Court compel the Government to elect before trial.

▮ Before trial, a court may, in its discretion, compel election between multiplicitous counts, if the mere making of the charges would prejudice the defendants in the eyes of the jury. *United States v. Reed*, 639 F.2d 896, 904 n. 2 (2d Cir.1981) (citing 1 C. Wright, *Federal Practice and Procedure* § 145, at 336 (1969)). The Court must first determine if the challenged counts are multiplicitous. Multiplicity is the charging of a single offense in several counts. 1 C. Wright, *Federal Practice and Procedure* § 142, at 469 (2d ed. 1982). Whether charges are multiplicitous is, in important part, a question of legislative intent. In the absence of pertinent legislative history, congressional intent will be determined by applying the *Blockburger* test. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) (whether each offense requires proof of a fact which the other does not); *Ball v. United States*, 470 U.S.

---

*v. Sullivan*, 332 U.S. 689, 696, 68 S.Ct. 331, 335–36, 92 L.Ed. 297 (1948).

**9.** Although named in different counts the different defendants allege the same theory. Beech-Nut defendants claim that Counts Twenty-two through Two Hundred Thirty-six and Two Hundred Thirty-seven through Four Hundred Fifty are multiplicitous and Shaeffer challenges Counts Four Hundred Fifty-one through Four Hundred Sixty and Four Hundred Sixty-one through Four Hundred Seventy.

**10.** Counts Twenty-two through Two Hundred Thirty-six allege that Beech-Nut defendants violated section 331(a) by introducing into interstate commerce adulterated foods as defined by 21 U.S.C. §§ 342(b)(1) and 342(b)(2). Counts Two Hundred Thirty-seven through Four Hundred Fifty charge the same defendants with violating section 331(a) because the same shipments were misbranded as defined by 21 U.S.C. §§ 343(a)(1), 343(b), 343(i)(2) and 343(k). Counts Four Hundred Fifty-one through Four Hundred Sixty charge defendant Shaeffer with introducing adulterated foods into interstate commerce in violation of 21 U.S.C. § 331(a). Counts Four Hundred Sixty-one through Four Hundred Seventy charge the same defendant with violating section 331(a) because the same shipments were misbranded.

**11.** Counts One Hundred Nineteen through One Hundred Twenty-three refer to shipments of adulterated apple juice to Imperial Warehouse on August 12, 1982. Counts Three Hundred Nine through Three Hundred Thirteen allege that the same shipments were misbranded. Counts One Hundred Twenty-three through One Hundred Twenty-seven refer to shipments of adulterated apple juice products to the same customer on August 13, 1982. Counts Three Hundred Thirteen through Three Hundred Seventeen allege that the same shipments were misbranded.

**1496**

856, 861, 105 S.Ct. 1668, 1672, 84 L.Ed.2d 740 (1985).

The food legislation was meant to protect the people (i) against unwholesome foods and (ii) against deception in the sale of commodities. S.Rep. No. 301, 58th Cong., 2d Sess. 11, 14, 21, 22 (1906). The legislative history of 21 U.S.C. § 331(a) indicates that a single shipment of "misbranded AND adulterated" food may constitute separate offenses.

Moreover, the *Blockburger* test confirms Congress' intent to provide separate offenses for violating section 331(a) by introducing adulterated AND misbranded foods in interstate commerce.

■ Section 331(a) must be read in conjunction with 21 U.S.C. § 342, defining adulterated foods, and 21 U.S.C. § 343, defining misbranded foods. According to *Blockburger*, charges are multiplicitous if proving one offense necessarily proves the other. The question here is whether the crime of introducing adulterated food into interstate commerce requires proof of an element which is not required in proving the crime of introducing misbranded foods into interstate commerce. The answer is yes. A food is adulterated if it is diluted or depreciated in quality, if it fails to come to the standards set by law as to ingredients, or to which any foreign substance, wholesome or unwholesome, is added. *Ballantine's Law Dictionary* 39 (3rd ed. 1969); *see also* 21 U.S.C. § 342. On the other hand, a food is misbranded if its label is false or misleading.[12] *Ballentine's Law Dictionary* 805 (3rd ed. 1969); *see also* 21 U.S.C. § 343. These definitions clearly show that a product may be misbranded without necessarily being adulterated and vice versa. Therefore, one who violates section 331(a) by introducing adulterated foods into interstate commerce does not necessarily violate section 331(a) for introducing misbranded foods. Therefore, one shipment of adulterated AND misbranded foods introduced into interstate commerce may constitute two separate section 331(a)

offenses. *Contra United States v. Bel-Mar Laboratories, Inc.*, 284 F.Supp. 875 (E.D.N.Y.1968); *United States v. Success Chemical Co.*, No. 63 CR 434 (E.D.N.Y. Feb. 13, 1964) (In neither of these cases, however, did the Court consider the legislative history of § 331(a) or apply the *Blockburger* test). Accordingly, the previously challenged counts are not multiplicitous.

■ The Beech-Nut defendants also argue that Counts One Hundred Nineteen through One Hundred Twenty-seven and Three Hundred Nine through Three Hundred Seventeen are multiplicitous in an additional respect. They claim that although the shipments at issue in these counts were allegedly separate and occurred on different days, the shipments were part of a single "continuous" act of introduction.

In addition, the Beech-Nut defendants, joined by Kaplansky, Shaeffer and Williamson, move to compel election between mail fraud counts. 18 U.S.C. § 1341. Under 18 U.S.C. § 1341, each mailing is a separate offense. *United States v. Johnpoll*, 739 F.2d 702, 715 (2d Cir.), *cert. denied*, 469 U.S. 1075, 105 S.Ct. 571, 83 L.Ed.2d 511 (1984) (citing *Badders v. United States*, 240 U.S. 391, 394, 36 S.Ct. 367, 368, 60 L.Ed. 706 (1916)). Defendants argue that Counts Three, Four, Fifteen and Sixteen are multiplicitous because the alleged mailings occurred on the same day.

Until the Government actually submits evidence in support of the indictment, it is impossible to determine whether any of these additional Counts[13] are multiplicitous or not. *See United States v. Vinieris*, 595 F.Supp. 88, 92 (S.D.N.Y.1984). Accordingly, defendants' motions to compel election between multiplicitous counts are dismissed as premature.

### V. *Severance*

The Beech-Nut defendants move for a severance on the basis of improper joinder under Rule 8(b), Fed.R.Crim.P., or prejudicial joinder pursuant to Rule 14, Fed.R.

---

**12.** *United States v. Articles of Food ... "Manischewitz ... Diet Thins"*, 377 F.Supp. 746 (E.D.N.Y.1974) (label was misleading as to its dietary use).

**13.** Counts One Hundred Nineteen through One Hundred Twenty-seven, Three Hundred Nine through Three Hundred Twelve and mail Counts Three, Four, Fifteen and Sixteen.

Crim.P. They argue that joinder is improper under Rule 8(b) because the indictment alleges multiple conspiracies (Count One) and multiple schemes to defraud (Counts Two through Twenty-one).

Rule 8(b) permits joinder of two or more defendants in a single indictment where the defendants are alleged to have participated in the same transaction or series of acts or transactions which are part of a common scheme or plan. Fed.R.Crim.P. 8(b).

 In denying defendants' motions to dismiss Count One for alleging multiple conspiracies and Counts Two through Twenty-one for failure to allege a common scheme to defraud, this Court held that the present indictment properly charges defendants with participating in a single conspiracy and a common scheme to defraud. By definition, defendants allegedly engaged in the same series of acts or transactions and common scheme to defraud. Therefore, joinder is proper under Rule 8(b), Fed.R.Crim.P. *See United States v. Bernstein,* 533 F.2d 775, 789 (2d Cir.), *cert. denied,* 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976); *United States v. Santoro,* 647 F.Supp. 153, 178–79 (E.D.N.Y. 1986).

The Beech-Nut defendants also seek severance pursuant to Rule 14 on the basis of antagonistic defenses, prejudicial spillover and the Government's alleged inability to prove a single conspiracy. Fed.R.Crim.P. 14. Beech-Nut defendants assert that their defense is lack of knowledge and speculate that the Suppliers' defense will be lack of intent to defraud. Beech-Nut defendants simply repeat their "unknowing victim" theory. They were unaware of the adulterated nature of the concentrate purchased from the Suppliers. They never conspired with the Suppliers and never participated in a common scheme to defraud with the Suppliers. The Beech-Nut defendants compare their lack of knowledge defense with the Suppliers' anticipated lack of intent to defraud defense and conclude that these defenses are antagonistic and warrant severance.

 When seeking severance on the basis of antagonistic defenses, defendants must do more than merely anticipate that one defendant may try to save himself at the expense of the other. *United States v. Papadakis,* 572 F.Supp. 1518, 1521 (S.D.N.Y.1983), *aff'd,* 739 F.2d 784 (2d Cir.), *cert. denied,* 469 U.S. 918, 105 S.Ct. 297, 83 L.Ed.2d 232 (1984). A defendant must show that the defenses are irreconcilable. Severance is required only upon a showing that the jury, in order to believe the core of the testimony offered on behalf of one defendant, must necessarily disbelieve the testimony offered in favor of another defendant. *United States v. Potamitis,* 739 F.2d 784, 790 (2d Cir.), *cert. denied,* 469 U.S. 934, 105 S.Ct. 332, 83 L.Ed.2d 269 (1984).

 Assuming that the defenses set forth by the Beech-Nut defendants are presented at trial, the level of antagonism between the asserted defenses does not mandate severance. A jury could easily believe one defense without disbelieving the other. Therefore, although the alleged defenses may not be identical, they are not irreconcilable. *See United States v. Carpentier,* 689 F.2d 21, 28 (2d Cir.), *cert. denied,* 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 957 (1983).

Beech-Nut defendants also argue that severance should be granted because a joint trial would result in prejudicial spillover. They anticipate that the Government's evidence of Beech-Nut defendants' knowledge will be bland and innocuous. In contrast they envision the Government casting Supplier defendants as deceitful and "unscrupulous swindlers." In their view the prejudicial spillover warrants severance.

 In determining whether to grant or deny severance under Rule 14, Fed.R. Crim.P., on the basis of prejudicial spillover, the Court must consider the amount of spillover and whether the prejudice can be cured by a proper jury instruction. *See United States v. Carson,* 702 F.2d 351, 366–67 (2d Cir.), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983).

 In our opinion, the Beech-Nut defendants have greatly exaggerated the risk

of prejudicial spillover. They forget that the Government, in addition to proving Beech-Nut's knowledge, will also attempt to prove that Beech-Nut defendants conspired and entered into a scheme to defraud with Supplier defendants. In other words, the Government's case against the Beech-Nut defendants may not be as bland and innocuous as defendants claim. As in most multidefendant cases, there will undoubtedly be a certain amount of spillover. However, a proper jury instruction should adequately compartmentalize the evidence as to each count and each defendant and should cure any prejudice. *See United States v. Losada,* 674 F.2d 167, 171 (2d Cir.), *cert. denied,* 457 U.S. 1125, 102 S.Ct. 2945, 73 L.Ed.2d 1341 (1982).

■ As a general rule, persons indicted together should be tried together. *United States v. Ventura,* 724 F.2d 305, 312 (2d Cir.1983). To overcome the presumption in favor of joint trials, defendants must prove that a joint trial would result in substantial prejudice and deny them a fair trial. *United States v. Cody,* 722 F.2d 1052, 1061 (2d Cir.1983), *cert. denied,* 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 873 (1984); *United States v. Persico,* 621 F.Supp. 842, 852 (S.D.N.Y.1985), *aff'd,* 804 F.2d 185 (2d Cir. 1986). Defendants have not sustained their burden of proof. Accordingly, defendants' motion to sever must be denied.

In connection with their severance motion, Beech-Nut defendants claim that the Government will be unable to prove a single conspiracy. Therefore, the Court should direct the Government to produce a preliminary proffer of evidence on the conspiracy and mail fraud counts before determining whether severance should be granted.

This Court has held that the indictment properly alleges a single conspiracy and a single scheme to defraud. Thus, defendants' request is denied.

## VI. *Vagueness and Failure to State a Claim*

Beech-Nut defendants move to dismiss Counts Twenty-two through Four Hundred Fifty for vagueness and failure to state an offense. They argue that the act of intro-duction is an essential element of a section 331(a) offense. 21 U.S.C. § 331(a). Therefore, the indictment should allege the exact origin and destination of each shipment. In the absence of such allegations, Beech-Nut defendants argue that the indictment should be dismissed for vagueness and failure to state an offense.

■ An indictment is adequate if it contains the essential elements of the offense, sufficiently apprises the defendants of what they must be prepared to meet and is detailed enough to assure against double jeopardy. *Wong Tai v. United States,* 273 U.S. 77, 80–81, 47 S.Ct. 300, 301–302, 71 L.Ed. 545 (1927); *United States v. Chawla,* 482 F.Supp. 1136, 1140 (E.D.N.Y.1980). In this Circuit indictments are sustained if they do little more than track the language of the statute and state the time and place of the offense in approximate terms. *United States v. Salazar,* 485 F.2d 1272, 1277 (2d Cir.1973).

■ The present indictment tracks the language of the statute. It identifies the dates of each shipment, the products shipped and the recipients of the shipments. The indictment need not allege the exact site where each introduction into interstate commerce occurred. All the shipments originated in "the Eastern District of New York and elsewhere" and were sent to locations outside the State of New York. The allegations showing that the adulterated or misbranded foods moved in interstate commerce satisfy the interstate commerce element of the offense. Counts Twenty-two through Four Hundred Fifty satisfy the *Wong Tai* requirements.

Accordingly, defendants' motion is denied.

■ Hoyvald, joined by Lavery and Williamson, moves to dismiss mail fraud Counts Four, Five, Seven, Eight, Nine and Fifteen for vagueness. For each mail fraud Count, the indictment provides a Beech-Nut document number, the date and recipient of the mailing. Counts Four, Five and Seven refer to the same document number, B11379, and Counts Eight, Nine and Fifteen refer to document number

B11849. Hoyvald argues that Counts Four, Five, Seven, Eight, Nine and Fifteen should be more specific and identify what type of papers, the documents numbered B11379 and B11849 actually are. He argues that if Counts Four, Five, Seven, Eight, Nine and Fifteen are based on separate mailings of the same document, the Counts should be dismissed for vagueness.

We previously held that the mail fraud Counts properly allege the essential elements of the crime. Each use of the mail is a separate offense. *United States v. Johnpoll*, 739 F.2d 702, 715 (2d Cir.), *cert. denied*, 469 U.S. 1075, 105 S.Ct. 571, 83 L.Ed.2d 511 (1984). Therefore, Counts Four, Five, Seven, Eight, Nine and Fifteen are sufficiently specific and Hoyvald's motion is denied.

## VII. *Prosecutorial Misconduct*

Defendant Hoyvald, joined by Lavery, seeks to dismiss the indictment based on alleged prosecutorial misconduct during the grand jury investigation of this case. Alternatively, Hoyvald requests an evidentiary hearing on the issue of grand jury abuse.

Hoyvald claims that the Government erred in allegedly (1) presenting false and irrelevant evidence to the grand jury, (2) withholding exculpatory evidence from the grand jury, (3) misinforming the grand jury as to the pertinent law, (4) presenting evidence of Hoyvald's nationality, and (5) admitting an unauthorized person into the grand jury room. Hoyvald argues that as a result of these incidents, the grand jury was biased and thus the indictment should be dismissed.

"An indictment returned by a legally constituted and unbiased grand jury ... if valid on its face, is enough to call for a trial on the merits," *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956). An indictment will be dismissed on the grounds of prosecutorial misconduct in very limited and extreme circumstances. Dismissal is warranted in cases of long standing, widespread and continuous official misconduct or where lesser sanctions could not cure the prejudice caused to defendants. *United States v.*

*Broward*, 594 F.2d 345, 351 (2d Cir.), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979); *United States v. Sam Goody, Inc.*, 506 F.Supp. 380, 392 (E.D.N.Y.1981).

Defendant's claims do not constitute grounds for dismissal of the indictment. First, courts do not review the credibility of grand jury witnesses. *United States v. Guillette*, 547 F.2d 743, 753 (2d Cir.1976), *cert. denied*, 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977). Second, the Government is under no obligation to present to the grand jury evidence favorable to the defendant. *United States v. Ciambrone*, 601 F.2d 616, 622 (2d Cir. 1979). Third, misinforming the grand jury as to the applicable law does not constitute grounds for dismissal. *United States v. Buchanan*, 787 F.2d 477, 487 (10th Cir. 1986); *United States v. DePalma*, 461 F.Supp. 778, 796 (S.D.N.Y.1978). Fourth, the evidence of defendant's nationality was too innocuous to warrant dismissal of the indictment. *See United States v. Ajlouny*, 476 F.Supp. 995, 999 (E.D.N.Y.1979), *aff'd on other grounds*, 629 F.2d 830 (2d Cir. 1980), *cert. denied*, 449 U.S. 1111, 101 S.Ct. 920, 66 L.Ed.2d 840 (1981) (evidence of defendant's P.L.O. connection did not warrant dismissal of the indictment). Fifth, the record belies defendant's claim that an unauthorized person was admitted into the grand jury room.

Accordingly, defendant's motion is dismissed and his request for a hearing denied.

## VIII. *Discovery*

Defendants filed motions for discovery and a bill of particulars. They have asked this Court to require the production of all the Government's files in this case.

The Government has made available to defendants over 30,000 documents. This Court has repeatedly suggested that the defendants pare down their discovery demands as their requests were met. Defendants have arbitrarily refused and have made no effort whatsoever to do so. Not a single discovery motion has been withdrawn to date.

This Court believes that the Government's 30,000 documents must have answered a great many, if not all, of defendants' requests and will not reward the defendants for their intransigent behavior. We are persuaded that the Government has fulfilled its obligations. Therefore, the discovery and bill of particulars motions are denied.

Finally, defendant Hoyvald has filed (1) a motion pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure requesting a pre-trial return date for trial subpoenas *duces tecum*, (2) a motion under Fed.R. Crim.P. 15 for permission to take depositions and to issue letters rogatory, and (3) a motion for additional time to file motions to suppress and other pre-trial motions.

A return date for trial subpoenas *duces tecum* is hereby set for July 31, 1987. In addition, defense counsel should confer with counsel for the Government and attempt to stipulate as to necessary depositions and letters rogatory. If an agreement is reached, the Court will "so order" such stipulations. If an agreement is not reached, the parties should serve and file notices to take needed depositions and motions, on 10–day notice, asking for leave to serve letters rogatory. Defendants' request for additional time to serve and file motions to suppress and other pre-trial motions is granted. All additional motions, however, must be made by service of appropriate notices of motions within fourteen (14) days of the date of filing of this Memorandum.

SO ORDERED.