**UNITED STATES of America**

v.

**BEECH–NUT NUTRITION CORPORATION, Niels L. Hoyvald, John F. Lavery, Zeev Kaplansky, Raymond H. Wells, Nina B. Williamson, South Orange Express, Inc., Danny A. Shaeffer, Defendants.**

**No. 86 CR 715.**

United States District Court,
E.D. New York.

Dec. 22, 1987.

Andrew J. Maloney, U.S. Atty., E.D. N.Y., Brooklyn, N.Y. by Thomas H. Roche, Asst. U.S. Atty., and by John R. Fleder, Director, Office of Consumer Litigation, U.S. Dept. of Justice, Washington, D.C., Kenneth L. Jost, for U.S.

Schulte Roth & Zabel by John S. Martin, J., Stacey J. Moritz, Philip G. Barber, New York City, for defendant Beech–Nut.

Kostelanetz & Ritholz, New York City by Lawrence S. Feld, and Williams & Connolly, Washington, D.C. by Richard M. Cooper, Brendan V. Sullivan, Jr., Barry S. Simon, Jeanne M. Rowzee, for defendant Hoyvald.

Steven Kimelman, New York City, for defendant Lavery.

Obermaier, Morvillo & Abramowitz, by Elkan Abramowitz, New York City, for defendant Kaplansky.

Emanuel R. Gold & Associates, by Emanuel R. Gold, New York City, for defendant Wells.

Thomas J. Concannon, The Legal Aid Society, Brooklyn, for defendant Williamson.

Gotlin, Jaffe & LaBush by Gerald LaBush, New York City, for defendant South Orange Exp.

Ira London, Vivian Shevitz, Brooklyn, N.Y. and Irwin H. Schwartz, Seattle, Wash., for defendant Shaeffer.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendant Hoyvald has moved to dismiss the indictment against him on the basis of alleged Speedy Trial Act violations.[1]

The Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, is not, as some defense counsel seem to think, designed as a trap for unwary United States Attorneys or United States District Judges. Again, notwithstanding some defense counsels' apparent belief to the contrary, the Act does not relieve them of their obligations as officers of the Court not to make misrepresentations to the Court on one day and attempt to deny the same on a later day.

The indictment herein, consisting of 470 counts charging the eight named defendants with a variety of crimes ranging from conspiracy with intent to defraud to selling adulterated and misbranded apple juice products, was returned on November 5, 1986.

On the arraignment of all the defendants (except the defendant Wells, who was arraigned on November 13, 1986), "the defendants sought additional time to file what they considered to be significant pretrial motions." Hoyvald Memo of November 9, 1987, at 2. A detailed discussion was had as to the qualification of the case with its multiple defendants and counts as a complex case within the meaning of Section 3161(h)(8)(B)(ii), which provides in pertinent part:

> (h) The following periods of delay shall be excluded in computing the time within which ... the trial of any ... offense must commence:
>
> .    .    .    .    .
>
> (8)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.
>
> .    .    .    .    .

---

1. By a letter dated November 10, 1987, defendant Lavery joined in this motion.

(ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

With respect to this issue, at the arraignments Assistant U.S. Attorney Thomas H. Roche, Esq., made the following representations to this Court:

*November 13, 1986*

[T]his indictment charges eight defendants for 400 various counts, which I believe would involve in excess of two and one-half thousand counts to be resolved with respect to all defendants as to the varied counts.

The indictment charges, among other things, a violation of Title 21, United States Code, the Food, Drug and Cosmetic Act. It involves allegations that the Beechnut Nutrition Corporation and other defendants named in the indictment knowingly shipped counterfeit or adulterated apple juice in interstate commerce. The violations involve an analysis of evidence to be adduced at the trial, demonstrating that the alleged food product shipped was not, in fact, apple juice. It involves extensive analysis and testing by the Food and Drug Administration, by private laboratories. It involves thousands and thousands of documents which the government would have to introduce to show the adulteration. It would also have to prove that these items were, in fact, shipped in interstate commerce.

All of these things, your Honor, I believe are time-consuming and I also believe will be of the nature which will cause extensive motions by the defendants in this case. The representation has already been made to me and has been made to the Assistant Attorney-General of the United States by Mr. Brendan Sullivan who represents the president of the corporation, who has indicated prior to the indictment to the Assistant Attorney-General, Mr. Willard, that they did anticipate very extensive motion practice. Tr. at 4-5.

*November 14, 1986*

As your Honor knows, this indictment involving 470 counts and it charges three areas in violations of the Law, and a Conspiracy Count, a mail fraud count and hundreds of counts in violation of the food, drug and cosmetic act. As your Honor also knows from a review the indictment, the indictment charges that the Corporation and these other defendants shipped millions of bottles of bogus apple juice throughout the United States and a number of foreign countries.

The evidence in this case will have to demonstrate the defendants knowingly engaged in those acts which involved thousands of documents indicating that the foods that were shipped were in fact bogus and were not as they were labled. It involves the testimony of experts and indeed with respect to these 8 defendants and the 470 counts, we are dealing with approximately 2 and a half thousand counts to resolve for the Government to prove. Tr. at 12.

On November 14th, in response to the Court's question to movant's counsel herein with respect to whether this case qualified as a complex case within the meaning of the above-quoted section of the Act, the following occurred:

THE COURT: ... What is your view on that; Mr. Sullivan?

MR. SULLIVAN: Your Honor, we agree with the Government's representation that it is a complex case and would waive a Speedy Trial Act formerly [sic] [formally].

MR. MARTIN: Also that is true on behalf of the Corporation.

MR. FITZPATRICK: That is the same for Mr. Lavery, your Honor.

MR. GOLDMAN: I would join in that comment, your Honor.

MR. CONCANNON: The same for us, your Honor.

MR. LABUSH: Yes, your Honor.

MS. SHEVITZ: Yes, your Honor. Tr. at 11–12.

Having received the foregoing express representations from defense counsel not only that this is a "complex case" within the meaning of the Act but that they would formally waive the Speedy Trial Act, this Court made a finding that the case qualified as a "complex case" within the meaning of the above-quoted section. The Court then also expressly said:

I will suspend all other provisions of the Act until we are well down the road in the pretrial proceedings and at that point we will discuss the appropriate date for trial.

Tr. at 13.

Following the submission of voluminous [2] motions, affidavits, exhibits and memoranda, the last of which were filed on March 31, 1987, this Court prepared and filed its opinion on May 11, 1987. *United States v. Beech–Nut Nutrition Corp.*, 659 F.Supp. 1487 (E.D.N.Y.1987), familiarity with which is assumed.

In connection with their pretrial motions, movant herein filed (i) a motion pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure requesting a pretrial return date for trial subpoenas *duces tecum*, (ii) a motion under Federal Rule of Criminal Procedure 15 for permission to take depositions and to issue letters rogatory, and (iii) a motion for additional time to file motions to suppress and other pretrial motions. Hoyvald Pretrial Motions Nos. 13, 14 and 15.

In connection with these motions defendant Hoyvald, in a memorandum signed by one of his attorneys (Barry Simon, Esq.), made the following representations to this Court:

Defendant Beech–Nut Nutrition Corporation has been since 1979 a wholly-owned subsidiary of Nestle, S.A., which is based in Vevey, Switzerland. During the time period relevant to this indictment, Nestle and its research and technical laboratories provided technical expertise, advice and training to Beech–Nut with respect to all aspects of Beech–Nut's manufacturing operation.

Defense counsel have identified a significant number of present and former employees of Nestle, S.A. and its subsidiaries who may have knowledge of issues central to this case. In addition, counsel have begun to inspect and copy the multitude of documents and other materials relevant to this case; counsel are in the process of reviewing such documents so as to identify additional potential witnesses. It appears that a number of prospective defense witnesses are persons living outside the United States.

At this stage of the case, Mr. Hoyvald's counsel are unable to identify with certainty those persons living outside the jurisdiction of the United States who may be called as witnesses for Mr. Hoyvald at trial. Furthermore, Mr. Hoyvald's counsel are just beginning the task of arranging interviews of such prospective witnesses. Until such interviews have been conducted, Mr. Hoyvald's counsel are unable to identify prospective witnesses who would be unavailable at the time of trial and to make the appropriate showing for the issuance of letters rogatory pursuant to 28 U.S.C. § 1781.

Mr. Hoyvald's counsel expect to be conducting interviews necessary to make these determinations over the next several months. Upon reaching a determination that depositions pursuant to international process would be appropriate, counsel will promptly move this Court for an Order authorizing the taking of such depositions.

## CONCLUSION

For the foregoing reasons, defendant Niels L. Hoyvald respectfully requests that the Court enter an Order permitting him to move, at a later date, for testimony of prospective defense witnesses to be taken by deposition pursuant to Federal

---

**2.** The docket sheet reflects 15 separate motions with accompanying affidavits and memoranda, an omnibus response by the Government, 10 separate reply memoranda and additional omnibus responses by the Government.

Rule of Criminal Procedure 15, and permitting application for issuance of letters rogatory pursuant to 28 U.S.C. § 1781. Hoyvald Memo in Support of Pretrial Motion No. 14, at 2–4.

Thus, Mr. Simon assured this Court that he needed "several months" to conduct interviews prior to trial, and that he would "promptly move this Court for an Order" once he decided that international depositions would be necessary.

In response to that specific request, the Court stated in its May 11th Memorandum and Order as follows:

A return date for trial subpoenas *duces tecum* is hereby set for July 31, 1987. In addition, defense counsel should confer with counsel for the Government and attempt to stipulate as to necessary depositions and letters rogatory. If an agreement is reached the Court will "so order" such stipulations. If an agreement is not reached, the parties should serve and file notices to take needed depositions and motions, on 10–day notice, asking for leave to serve letters rogatory. Defendants' request for additional time to serve and file motions to suppress and other pre-trial motions is granted. All additional motions, however, must be made by service of appropriate notices of motions within fourteen (14) days of the date of filing of this Memorandum.

659 F.Supp. at 1500.

Thus, this Order tolled the running of the Speedy Trial clock in two ways: first, various periods of time were excluded under 18 U.S.C. § 3161(h)(1)(F) (pretrial motion excludable period of delay). Second, the continuance granted on November 14, 1986, under 18 U.S.C. § 3161(h)(8)(A) and 8(B)(ii) (complex cases) was unaffected.

No time limit was prescribed by the Court for the taking of such foreign depositions or for the service of letters rogatory. Nor was any communication ever received prior to October 14, 1987, from movant or

his attorneys that they no longer wished to take any such foreign depositions or to serve any such letters rogatory.

In the meanwhile, the Government made available to defendants for their examination and copying in excess of 30,000 documents in response to defendants' various requests for discovery and apparently on or about July 13th served trial subpoenas *duces tecum* on the defendant Corporation demanding production of a number of corporate records. As the Court understands it, counsel for the Corporation wrote the Government on or about August 17th advising that the subpoenaed documents were all subject to the attorney-client privilege and would not be produced but refused to identify the documents and made no motion to quash the subpoena nor did said counsel formally, informally or otherwise request a hearing by this Court to determine whether the subpoenaed documents were subject to the attorney-client privilege.

In their present motion, counsel for defendant Hoyvald somewhat disingenuously suggests that this Court should have set this case down for trial between May 11 and October 14, 1987.

In light of the above facts, this Court will not further characterize this suggestion.

More specifically, as virtually everybody in this country knows, between May 11 and August 3, 1987, defense counsel Brendan Sullivan, Esq., was actively engaged in what some persons have labeled as the "Ollie North Show" in Washington, D.C., and would almost certainly not have been available for the trial of this case during such period. Furthermore, as indicated above, defendant Hoyvald and his counsel had represented in writing to this Court that they wished not only to interview but also possibly to take the depositions of or address letters rogatory to an unspecified number of witnesses in Switzerland and other places outside the United States.[3]

---

**3.** In addition, at the hearing held on October 14, 1987, in this Court, Assistant U.S. Attorney Roche suggested that Messrs. Sullivan and Simon were also not ready for trial during this

period because they were busy trying by other means to obtain identical documents which had been denied to them in this Court's decision of

In short, there was absolutely no reason for this Court to believe that any of the defendants, least of all the defendant Hoyvald, was in any way ready for trial when on the Court's own motion it scheduled a pretrial conference for October 14, 1987, to discuss the status of pretrial preparations and a possible date for trial with all of the defense counsel involved herein.

Finally, notwithstanding the fact that all counsel were given substantial advance notice of this scheduled pretrial conference, no written motions were made by defendant Hoyvald or any other defendant to dismiss the case for failure of the Court and the Government to give one or more or all of them a speedy trial.

At the outset of the hearing on October 14th, when the Court announced that it wished to discuss with counsel an appropriate prospective trial date, Barry Simon, Esq., a partner of Brendan Sullivan, Esq. (who was present in the courtroom), stood up and attempted to make a verbal motion to dismiss the indictment against the defendant Hoyvald on the ground that said defendant's Speedy Trial rights had been violated. This was the first notice to anyone connected with the Court that the defendants (and particularly the defendant Hoyvald) had completed their pretrial discovery and work and were ready for trial. Much to the Court's astonishment, Mr. Simon (in Mr. Sullivan's presence) attempted to repudiate his partner's express agreement made in his client's presence on November 14, 1986, that this case "is a complex case" and his further agreement that they "would waive a Speedy Trial Act" formally.

At the same conference, counsel for the defendant Beech–Nut Nutrition Corporation attempted orally for the first time to quash the Government's subpoena on the ground that the corporate records sought were protected by the attorney-client privilege. After considerable discussion and a consultation with her client, such counsel agreed to turn over to the Government all of the requested documents except one

---

May 11th. In Mr. Roche's words the facts with respect to this effort are as follows:

> MR. ROCHE: The only matter, your Honor, that I am aware that is still pending in this case, I don't know if your Honor is aware of this yet, in January 2nd of this year, the Freedom of Information request was made by one of the attorneys for Neils Hoyvald, the President of Beechnut. Barry Simon brought a Freedom of Information request, initially an administrative proceeding, to the Food & Drug Administration looking for documents that FDA had pertaining to this matter.
>
> That request was denied by the Food & Drug Administration and on June 4th, your Honor, subsequent to your Honor's decision in this case, with respect to the motions filed by the defendant, Mr. Simon initiated a lawsuit in District Court in Washington before the Honorable Judge Louis Oberdorfor [sic] [Oberdorfer], seeking in the government suit, your Honor, the identical documents, a large group of documents from the FDA, but included among those, the very documents that the defendant sought in connection with the motion filed in this matter, in which your Honor denied.
>
> That matter was pending before Judge Oberdorfor in Washington, and on September 15th, Judge Oberdorfor, among other things on the motion of the government in this case, ordered this matter be transferred to this District to your Honor, because in the government's view, Judge Oberdorfor recognized that, in fact, what was going on was a matter that was directly connected to this case.
>
> Indeed, I would suggest to the Court that what the defendants were seeking to do in their FOIA request was to retain the documents that your Honor said they couldn't have at this stage of the proceedings.
>
> I would suggest to the Court that although it is not specifically delineated in Judge Oberdorfor's order, a copy of which I will hand up to the Court, if I may, that Judge Oberdorfor recognized that as well and ordered the case transferred here.
>
> That was on September 15th, your Honor.
>
> Subsequently, Mr. Simon sought a writ of mandamus with respect to Judge Oberdorfor in the District of Columbia Circuit, and that was denied, your Honor, I believe, last Thursday by the District Circuit....

Tr. at 2–4.

While it is true at the hearing Mr. Simon vigorously denied that this was an "end run" on this Court's decision, one may reasonably infer, as the Government chose to do, that Messrs. Sullivan and Simon were seeking such documents in connection with their pretrial preparation for this case and would not be ready for trial until they had exhausted all avenues to obtain them including a resort to seeking a writ of mandamus addressed to Judge Oberdorfer to the Court of Appeals for the District Court which was denied only a few days before this Court called the case to fix a date for trial.

which, it was agreed, should be submitted on formal motion papers to United States Magistrate A. Simon Chrein of this Court for a ruling with respect to whether it was subject to an attorney-client privilege.

Under all of the circumstances, this Court summarily rejected defendant Hoyvald's motion to dismiss the indictment against him on the ground that his Speedy Trial rights had been violated and suggested a trial date of November 2, 1987.

In response to this suggestion, the Government pointed out to the Court that it proposed to call approximately 90 witnesses and introduce into evidence "somewhere between 500 and 3000" exhibits in its case-in-chief and that as a physical practical matter it was impossible to schedule and arrange for the appearance of that many witnesses and the orderly production of that many documents in a two-week period. Accordingly, the Court acceded to the Government's request for an adjournment of the trial date to November 16, 1987.

*United States v. LoFranco*, 818 F.2d 276 (2d Cir.1987), relied on by the movant herein, does not help him. While it is true that the Second Circuit, in an *obiter dictum* in that case, reminded District Judges that an exclusion for a complex case "should reasonably be related to the actual needs of the case," *id.* at 277, the exclusion in this case, as evidenced by the recital of the above facts, is more than clearly warranted.

As stated at the outset of this memorandum, in this Court's view the Speedy Trial Act is not on the books to enable defendants to "trap" the Government or the Court into a mandatory dismissal of a defendant's case. Not only in the case at bar was the defendant Corporation's unasserted motion to quash a Rule 17(c) subpoena *duces tecum* still open, but all of the time permitted for the defendant Hoyvald to serve and file notices to take needed depositions and motions, on ten days notice, asking for leave to serve letters rogatory was open and said defendant had never once indicated to the Court that he did not plan to proceed as he outlined in his memorandum quoted at length above. The Speedy Trial time was therefore excludable, not only under the complex case exception, but also on the ground that defendant had requested and been granted additional time to take foreign depositions and other discovery prior to the trial. Without the slightest doubt, question or hesitation this Court again denies defendants' motions to dismiss the indictment against them for failure of the Government and the Court to give them a speedy trial under and in compliance with the Speedy Trial Act of 1974.

Parenthetically, it shocks and saddens this Court that the law firm of which Messrs. Sullivan and Simon are members should lend its good name to a motion of this type, given the foregoing facts. It is true that defense counsel are obligated to use their best efforts on behalf of their clients in their defense in a criminal case, but in this Court's view, "best efforts" do not encompass the tactics above described.

SO ORDERED.