GLASER, KOHN & CO. v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. May 20, 1915.)

No. 2151.

1. FOOD ⬡�col2—REGULATIONS—CONSTRUCTION.

Food and Drugs Act June 30, 1906, c. 3915, 34 Stat. 768 (Comp. St. 1913, §§ 8717–8728), should be construed in the light of its purpose, to secure the purity of food and drugs, and to inform the purchasers of what they are buying, and as between the dealer, to whom the purity of food is guaranteed, and the manufacturers, the act throws the ultimate responsibility on the manufacturers, and the act should be interpreted, if reasonably possible, so as to carry out this purpose.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 2; Dec. Dig. ⬡⟶2.]

2. FOOD ⬡⟶18—REGULATIONS—CONSTRUCTION—"CONTINUING GUARANTY."

Food and Drugs Act, § 9 (Comp. St. 1913, § 8725), providing that no dealer shall be prosecuted under the act when he can establish a guaranty signed by the wholesaler, jobber, manufacturer, or other party from whom he purchases articles to the effect that the same is not adulterated or misbranded and that the guaranty, to afford protection, shall contain the name and address of the party making the sale of the article to the dealer, includes continuing guaranties, as well as those given at the time of a sale and in reference to specific goods; and a guaranty of a manufacturer that all goods furnished a wholesale dealer "hereafter will comply with the Food and Drugs Act" until notice of revocation is a "continuing guaranty," sufficient under the section, and the guaranty attaches to every item of sale made by the manufacturer to the wholesaler until the guaranty is revoked, and it furnishes a basis for an information against the manufacturer for selling an adulterated article of food, since where, by the terms of a written guaranty, it appears that the parties look to a

future course of dealing for an indefinite time, or a succession of credits to be given, it should be deemed a continuing guaranty.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 20; Dec. Dig. ☞18.

For other definitions, see Words and Phrases, Second Series, Continuing Guaranty.]

3. GUARANTY ☞27—LETTERS OF GUARANTY—CONSTRUCTION.

A letter of guaranty should receive a liberal, fair, and reasonable interpretation, and attain the object designed and the purpose to which it is applied.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 28; Dec. Dig. ☞27.]

4. CRIMINAL LAW ☞1159—EVIDENCE—SUFFICIENCY.

Though expert opinion should be received with caution, it is within the province of the jury to determine its weight; and a conviction, sustained by opinion evidence not inherently impossible nor improbable, together with other evidence, will not be disturbed.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3074–3083; Dec. Dig. ☞1159.]

5. FOOD ☞14—INTERSTATE COMMERCE—STATUTORY REGULATIONS—VIOLATION —ACTS CONSTITUTING.

A manufacturer, who delivers adulterated food to a wholesaler with knowledge that the latter is engaged in interstate commerce, is within the Food and Drugs Act, punishing the sale and delivery in interstate commerce of adulterated food.

[Ed. Note.—For other cases, see Food, Cent. Dig. §§ 10–13; Dec. Dig. ☞14.

What constitutes a violation of pure food regulations, see note to Brina v. United States, 105 C. C. A. 559.]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois; Kenesaw M. Landis, Judge.

Glaser, Kohn & Co., a corporation, was convicted of selling adulterated food, and it brings error. Affirmed.

On or about January 15, 1907, plaintiff in error executed and delivered to Steele-Wedeles Company, of Chicago, Ill., a guaranty in writing signed by it, which guaranty reads:

"Steele-Wedeles Co., City—Gentlemen: Replying to your favor 10th inst., would say we hereby guarantee that all goods as furnished you hereafter will comply with the Food and Drugs Act of June 30, 1906, with the understanding, however, that if we at any time use labels or packages furnished by you, or gotten up as per your instructions, we shall not be responsible for the form or wording of the same, but only guarantee that goods covered by same are not adulterated. It is expressly understood that the above shall hold good until notice of revocation be given in writing.

"Truly yours,                                     Glaser, Kohn & Co.,
                                                  "G. D. Glaser, Pres."

Afterwards, and on or about September 15, 1910, and while said guaranty, by its terms, was in full force, plaintiff in error sold and delivered to said Steele-Wedeles Company two dozen jars of preserves, described as "Herald Brand Fruit Preserves Blackberry Flavor, Apple Preserves 74%, Blackberry Preserves 26%," which jars of preserves Steele-Wedeles Company shipped in interstate commerce from Chicago to Rock Springs, in the state of Wyoming, on or about October 14, 1910. On or about October 20, 1910, an inspector of the United States Bureau of Chemistry purchased a sample of these preserves and sent the same, properly sealed, to the Bureau of Chemistry of the Depart-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ment of Agriculture, where it was duly examined by experts on or about December 8, 1910, who pronounced the sample analyzed to contain mold, and to be partly decomposed, and made from partly decomposed fruit. Thereafter the United States filed its information, containing six counts, against plaintiff in error, of which only the fourth count is here involved, which charges plaintiff in error with unlawfully knowingly selling and delivering to Steele-Wedeles Company the said jars of preserves, contrary to the provisions of the so-called Pure Food Law of the United States, approved June 30, 1906, entitled "An act for preventing the manufacture, sale or transportation of adulterated or misbranded or poisonous or deleterious foods, drugs, medicines and liquors, and for regulating traffic therein, and for other purposes," in that said jars of preserves, when and where they were so sold and delivered, were an adulterated article of food within the meaning of the act, and consisted in part of decomposed vegetable substance, and further charging that Steele-Wedeles Company shipped said jars contrary to law, by way of a common carrier in interstate commerce to Rock Springs, Wyo., as aforesaid, basing said information upon said guaranty as having been given and received under the terms of section 9 of said act of June 30, 1906.

On the trial the formal facts were stipulated into the record, and evidence of the condition of the preserves when delivered to Steele-Wedeles Company was introduced. This evidence consisted of the opinions of experts, based on the conditions found at the time of the Washington analysis, that the fruit was partly decomposed, not only at that time, but also at the time of the sale and delivery by defendants to Steele-Wedeles Company. Plaintiff in error offered no evidence, but saved exceptions to the introduction of the said letter of guaranty and to the sufficiency of the expert testimony. At the close of the evidence plaintiff in error moved the court to direct the jury to find plaintiff in error not guilty, which motion the court denied, and an exception was taken. Exception was also taken to that part of the court's instruction which charged the jury that the said guaranty was a legal guaranty. The jury found plaintiff in error guilty, and the court assessed a fine of $200 and costs, to reverse which sentence this writ of error was sued out.

The errors relied on are: (1) The court held that the alleged guaranty was legal and sufficient to hold plaintiff in error under said section 9. (2) The evidence was insufficient to show that the preserves were adulterated at the time they were delivered to Steele-Wedeles Company.

Thomas E. Lannen, of Chicago, Ill., for plaintiff in error.

Frederick Dickinson, of Chicago, Ill., for defendant in error.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). [1-3] Section 9 of the act approved June 30, 1906, reads as follows, viz.:

"Sec. 9. That no dealer shall be prosecuted under the provisions of this act when he can establish a guaranty signed by the wholesaler, jobber, manufacturer, or other party residing in the United States, from whom he purchases such articles, to the effect that the same is not adulterated or misbranded within the meaning of this act, designating it. Said guaranty, to afford protection, shall contain the name and address of the party or parties making the sale of such articles to such dealer, and in such case said party or parties shall be amenable to the prosecutions, fines and other penalties which would attach, in due course, to the dealer under the provisions of this act."

It will be seen that this section does not, in terms, seem to comprehend a general continuing guaranty, but seems to apply to the specified article contemplated at the time. Such, indeed, is plaintiff in error's contention. That construction, however, is narrow, and not in accord with the spirit of the act, which should be construed in the light of its

purpose, as said by the Supreme Court in McDermott v. Wisconsin, 228 U. S. 115–128, 33 Sup. Ct. 431, 433 (57 L. Ed. 754, 47 L. R. A. [N. S.] 984, Ann. Cas. 1915A, 39), "and of the power exerted in its passage." This purpose the court, in United States v. Antikamnia Co., 231 U. S. 654–665, 34 Sup. Ct. 222, 225 (58 L. Ed. 419, Ann. Cas. 1915A, 49), declares "is to secure the purity of food and drugs and to inform purchasers of what they are buying. Its provisions are directed to that purpose and must be construed to effect it." As between a dealer, to whom the purity of the goods is guaranteed, and the manufacturer, who has the better opportunity of ascertaining the facts, the act aims to throw the ultimate responsibility on the latter, and it should therefore be interpreted, if reasonably possible, so as to carry out this purpose to the fullest extent. In our judgment it is therefore not only a fair, but the most reasonable, construction of the act to include within the scope of section 9 continuing guaranties, as well as those given at the time of the sale and in reference to specific goods. The belated position of plaintiff in error as to the meaning of the statute with regard to a continuing guaranty comes to us undermined with its earlier construction, contained in the letter wherein it says, "We hereby guarantee that all goods as furnished you hereafter will comply," etc., and "it is expressly understood that the above shall hold good until notice of revocation be given in writing." There is no reason in law for the claim that a continuing guaranty is invalid.

When by the terms of a written guaranty it appears that the parties look to a future course of dealing for an indefinite time, or a succession of credits to be given, it is to be deemed a continuing guaranty. Am. & Eng. Ency. of Law (2d Ed.) vol. 14, p. 1139. Letters of guaranty should receive a liberal, fair, and reasonable interpretation, so as to attain the object for which the instrument is designed and the purpose to which it is applied. Lawrence v. McCalmont, 2 How. 426–449, 11 L. Ed. 326. We are clearly of the opinion that the letter of January 15, 1907, constituted a good, valid, and sufficient guaranty under the provision of said section 9, and that said guaranty attached to every item of sale made by plaintiff in error to Steele-Wedeles Company, after the sale thereof until revoked in accordance with the terms thereof, and that it furnished a basis for the filing of the information against plaintiff in error herein.

[4] With regard to the sufficiency of the proof to sustain the verdict of the jury to the effect that the preserves in question were adulterated at the time they were delivered to Steele-Wedeles Company, and not prepared in accordance with said act of June 30, 1906, we find no such situation as would warrant us in substituting our opinion for that of the jury. While expert opinion evidence should be received with caution, it is solely within the province of the jury to determine its weight. They saw and heard the witnesses. In cases such as this much of the evidence must necessarily be opinion evidence. In the present case there is nothing in the evidence inherently impossible, or even improbable. The error is not well assigned.

[5] With regard to the objection that the transaction does not, so far as plaintiff in error is concerned, come within interstate commerce,

plaintiff in error does not in its brief include it among the errors relied on. We are, however, satisfied that the point is not well taken. Steele-Wedeles Company was a wholesale grocer engaged in interstate commerce, as plaintiff in error well knew. By selling and delivering the preserves to that corporation upon the terms of the guaranty, it deliberately placed them in interstate commerce channels.

The judgment of the District Court is affirmed.