**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**DIANOVIN PHARMACEUTICALS,**
**INC., et al., Defendants-Appellants.**

**No. 72–1326.**

United States Court of Appeals,
First Circuit.

Heard Feb. 8, 1973.

Decided March 16, 1973.

Frank Carbo, Santurce, P. R., for appellants.

Howard S. Epstein, Atty., Antitrust Div., Dept. of Justice, with whom Thomas E. Kauper, Asst. Atty. Gen., Antitrust Div., Julio Morales Sanchez, U. S. Atty., Gregory B. Hovendon, Chief, Consumer Affairs Section, Alvin L. Gottlieb, Deputy Asst. Gen. Counsel, Joanne S. Sisk, Chief, Appellate and Special Proceedings Branch, and Jeffrey B. Springer, Atty., Food, Drugs, and Product Safety Division, United States Department of Health, Education, and Welfare, were on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This is an appeal by a Puerto Rico drug manufacturer, Dianovin, and its president, from an order of the district court[1] reinstating its earlier permanent injunction restraining them from activities violative of the Federal Food, Drug and Cosmetic Act (the "Act").[2]

Appellants' principal contention is that the district court lacked jurisdiction, there having been no showing at the hearing on reinstatement of the injunction that the drug there in issue (vitamin K for injection) entered interstate commerce after its manufacture by Dianovin. They assert further that Congress may not regulate what they describe as a local manufacturer solely manufacturing for local consumption, and that the drugs manufactured were "new drugs". Finally, assuming jurisdiction, they say the evidence was insufficient to warrant the injunction. We affirm.

This is not an appeal from an original injunction. The proceeding and order before us were upon a motion of the United States Attorney, made on February 5, 1971, to reinstate a permanent injunction which originally was entered against the appellants on February 17, 1969. The earlier injunction had been entered after hearing and was with the consent of the defendants.[3] Thereafter,

---

1. United States v. Dianovin Pharmaceuticals, Inc., 342 F.Supp. 724 (D.P.R. 1972).

2. 21 U.S.C. § 301 et seq.

3. The court recited in its 1969 Order of Permanent Injunction that both defendants had appeared; that the court had heard testimony and received evidence; that it had issued Findings of Fact and

on June 29, 1970, in an order entered by the district court (reciting the consent of all parties including the appellants, who appeared through counsel), the original injunction was suspended until further order of the court, its terms to "revert to their full force and effect at such time as the government presents evidence to this court:

"a. that the methods used in and the facilities and controls used by the defendants for the manufacture, processing, packing and holding of drugs do not conform to and are not operated in conformity with current good manufacturing practices, or

b. that any drug manufactured by the defendants is found by the government to be adulterated or misbranded within the meaning of the law, provided that all administrative proceedings be exhausted; . . . ."

It seems obvious, if there is ever to be progress in litigation,[4] that the issue before the court on the motion to reinstate was a narrow one: whether there were present any of the conditions provided in the June 29, 1970, order as causing a reversion of the injunction. That was all. The government did not have to retry its earlier case, nor reprove jurisdiction.

At the hearing the government more than met its burden. We have reviewed the complete and careful findings of the district court; they are supported by substantial evidence. They establish that the appellants' methods, facilities and controls used for the manufacture, processing, packing and holding of vitamin K (Menadione Sodium Bisulfite) injection, a drug within the meaning of 21 U.S.C. § 321(g), did not conform to current good manufacturing practices. They further establish misbranding and adulteration of the same drug within the meaning of the Act. As provided in the consent order of June 29, 1970, any of these findings justified reinstatement of the earlier injunction.

■ Only after the hearing did appellants raise "jurisdictional" objections, based primarily upon the government's failure to show that the vitamin K for injection entered interstate commerce after manufacture. The short answer is that the government had no reason at the hearing to try to do so. Jurisdiction had long before been settled—by the district court's 1969 findings that drugs were distributed, and components received, in interstate commerce, from which the appellants did not appeal, and by the consented-to order of permanent injunction which recited that the court "has jurisdiction of the subject matter herein and of all persons or parties hereto." We do not say that the injunction could be reinstated by showing the mishandling of some previously unmentioned drug over which the court clearly lacked jurisdiction. But Menadione Sodium Bisulfite injection was one of the drugs complained of in the original 1969 proceeding, where jurisdiction was conceded. The government, on its reinstatement motion, had no duty whatever to reestablish the interstate connections of the drug; at very most, if appellants, at this late date, had wished to raise a jurisdictional defense, the burden of proving the necessary facts was theirs.

■ Even, however, on the conceded facts relating to the interstate connections of vitamin K for injection, appellants' jurisdictional argument fails. It is undisputed that the raw material vitamin K utilized in the production of vitamin K injectible was received in interstate commerce. Following a common-

Conclusions of Law; and that the defendants had consented to the entry of a Permanent Injunction. No appeal was taken.

4. The June 29, 1970 order followed a hearing on June 11, 1970 at which counsel for appellants stated, in part, that "we [the Assistant United States Attorney and himself] have been conferring about the case and we have come to the stipulation as pointed out to the effect there would be a reinstatement of the injunction if in the future it is found that the operation of Dianovin Pharmaceuticals did not comply with the law as he has pointed out."

ly-known formula, appellants would mix the ingredients with liquid and place the resulting solution in ampules for sale. Adulteration or misbranding resulting from the doing of an act "with respect to, a . . . drug . . ., if such act is done while such article is held for sale (whether or not the first sale) after shipment in interstate commerce" is a prohibited act. 21 U.S.C. § 331(k). Apart from the fact that the end product—vitamin K for injection—was a drug, as defined in 21 U.S.C. § 321(g)(1), being in the National Formulary, its component raw materials were likewise drugs, being "articles intended for use as a component" of such a drug. 21 U.S.C. § 321(g)(1)(D). We see no point in restating the principles we recently set forth in United States v. Cassaro, Inc., 443 F.2d 153 (1st Cir. 1971). Although dealing with flour held after interstate shipment (which the defendant made into bread and rolls for local sale), the case is controlling.[5] The appellants' use of components shipped in interstate commerce to make vitamin K for injection brought their activities within § 331(k), and conferred jurisdiction to restrain violations thereof upon the district court. 21 U.S.C. § 332. As in *Cassaro*, we see nothing in § 331(k) or the district court's action transgressing the proper limits of authority conferred by the Commerce Clause.

The district court already having subject matter jurisdiction under the prior proceeding, and the appellants' most recent improper activities being related to a drug within the court's jurisdiction, it could plainly reinstate the original injunction for breach of the conditions of its suspension.

■■ Appellants' "new drug" argument is of no help to them. *See* 21 U. S.C. § 321(p). All drugs whether old or new are subject to the prohibition against adulteration or misbranding. *See* 21 CFR 1.106(b)(3)(ii) for special labelling requirements applicable to prescription new drugs. The issue is irrelevant to reinstatement of the injunction. The same may be said of appellants' last-minute attempt to attack the terms of the injunction. It is the same injunction entered without appeal and with their consent in 1969. Through counsel they agreed in 1970 that it could be reinstated upon a showing of the activities which were here abundantly demonstrated. The evidence of seriously deficient conditions and practices at appellants' plant, coupled with a history of unsuccessful efforts to obtain compliance by appellants with laws designed to protect the health and lives of the public, more than warranted injunctive relief. *See* United States v. Diapulse Corporation of America, 457 F.2d 25, 28–29 (2nd Cir. 1972). We find no attempt to impose "colonial rule" upon Puerto Rico, as appellants suggest. To the contrary, were the citizens of Puerto Rico to be denied the protection of food and drug laws, enacted for the safety of all United States citizens, wherever residing, they could quite properly complain.

Affirmed. Costs to appellee.

---

5. *See, also* United States v. 39 Cases . . . Mich. Brand Korleen Tablets, 192 F.Supp. 51 (E.D.Mich.1961), aff'd sub nom. United States v. Detroit Vital Foods, Inc., 330 F.2d 78 (6th Cir. 1964), cert. den. 379 U.S. 832, 85 S.Ct. 63, 13 L.Ed.2d 40 (1964); United States v. 40 Cases . . . Pinocchio Brand 75% Corn . . . Oil, 289 F.2d 343 (2nd Cir. 1961), cert. den. 368 U.S. 831, 82 S. Ct. 54, 7 L.Ed.2d 34 (1961); Palmer v. United States, 340 F.2d 48 (5th Cir. 1964), cert. den. 382 U.S. 903, 86 S.Ct. 238, 15 L.Ed.2d 156 (1965); United States v. Allbrook Freezing & Cold Storage, Inc., 194 F.2d 937 (5th Cir. 1952).