UNITED STATES of America,
Plaintiff,

v.

Allyson VIDAL–CRUZ,
et al., Defendants.

Nos. 98–277(CCC), 98–279(HL), 98–280(DRD), 98–282(DRD), 98–283(PG), 98–284(SEC), 98–285(PG), 98–287(CCC), 98–289(DRD), 98–290(DRD), 98–291(HL), 98–292(CCC), 98–297(CCC).

United States District Court,
D. Puerto Rico.

Sept. 1, 1999.

36

Desiree Laborde–Sanfiorenzo, U.S. Attorney's Office, San Juan, PR, for U.S. Attorneys.

Luis R. Rivera–Rodriguez, Hato Rey, PR, for Allyson Vidal–Cruz (1), defendant.

Efren T. Irizarry–Colon, Arecibo, PR, for William Rios–Torres (1), defendant.

Juan A. Pedrosa–Trapaga, San Juan, PR, for Eduardo Rivera–Pares (1), defendant.

Efren T. Irizarry–Colon, Arecibo, PR, Emilio Hidalgo–Nazario, Hatillo, PR, for John D. Navas–Rivera (1), defendant.

Carlos Noriega–Rodriguez, Hato Rey, PR, Efren T. Irizarry–Colon, Arecibo, PR, for Luis G. Alfonzo–Delgado (1), defendant.

Marlene Aponte–Cabrera, San Juan, PR, for Miguel A. Torres–Rivera (2), defendant.

Juan A. Pedrosa–Trapaga, San Juan, PR, for Rafael Franco–Rodriguez (1), defendant.

Manuel San–Juan–DeMartino, San Juan, PR, for Angel G. Lopez–Rivera (2), defendant.

Francisco M. Dolz–Sanchez, San Juan, PR, for Jose Maldonado–Montalvo (1), defendant.

Ivan Dominguez–Perez, El Monte Mall, Hato Rey, PR, for Carlos A. Rivera–Rodriguez (2), defendant.

Luis R. Rivera–Rodriguez, Hato Rey, PR, for Felix R. Mendoza–Benitez (1), defendant.

Rafael F. Castro–Lang, San Juan, PR, for Edwin Otero–Vazquez (2), defendant.

Victor M. Agrait–Defillo, Carolina, PR, for Rafael Hernandez–Dones (1), defendant.

Maria del Mar Davila–Rexach, San Juan, PR, for Jose A. Roman–Ramos (1), defendant.

Luis F. Abreu–Elias, Hato Rey, PR, Maria H. Sandoval, Santurce, PR, for Osvaldo R. Fuentes–Torres, defendant.

Francisco M. Dolz–Sanchez, San Juan, PR, for Wilfredo Picon–Rivera, defendant.

Jose F. Quetglas, San Juan, PR, for Julio A. Lopez–Garcia (2), defendant.

Benjamin Ortiz–Belaval, Hato Rey, PR, Efren T. Irizarry–Colon, Arecibo, PR, for Jose Antonio Lopez–Caceres (1), defendant.

Benjamin Ortiz–Belaval, Hato Rey, PR, for Neftali Velez–Ramos (2), defendant.

Efren T. Irizarry–Colon, Arecibo, PR, for Victor R. Gonzalez–Alvarez (1), defendant.

Carlos Noriega–Rodriguez, Hato Rey, PR, for Efrain Ramos–Rosario (2), defendant.

Marlene Aponte–Cabrera, San Juan, PR, for Miguel A. Torres–Rivera (4), defendant.

Before LAFFITTE, Chief Judge, PEREZ–GIMENEZ, CEREZO, CASELLAS, and DOMINGUEZ, District Court Judges.

## *OPINION & ORDER*

LAFFITTE, Chief Judge.

Defendants in the above captioned cases are charged with delivery or conspiracy to deliver adulterated milk in violation of the Federal Food, Drug and Cosmetic Act ("FFDCA").[1] 18 U.S.C. § 871, 21 U.S.C. §§ 331(a) and 333(a)(2). Federal jurisdiction is premised upon interstate commerce

[1] Defendants are milk processors and transporters of the allegedly adulterated milk to the processing plants.

as defined in 21 U.S.C. § 321(b). Specifically, defendants are charged with delivering into interstate commerce milk adulterated through the addition of water and salt, as defined in 21 U.S.C. §§ 321(f) and 342(b)(4), and delivered in violation of 21 U.S.C. §§ 331(a) and 333(a). Before the Court are defendants' motions to dismiss the indictment for want of federal criminal subject matter jurisdiction, and the government's opposition to those motions. For purposes of judicial economy, a joint hearing was held on August 18, 1999, to address the jurisdictional issue.[2]

## *DISCUSSION*

The government proposes three arguments in support of federal jurisdiction over this matter: 1) a presumption of jurisdiction pursuant to 21 U.S.C. § 379(a); 2) that the addition of an ingredient that had been shipped in interstate commerce is sufficient to render intrastate sales of the ultimate product subject to federal jurisdiction; and 3) that defendants delivered adulterated goods to a purchaser with the knowledge that the goods would subsequently be introduced into interstate commerce. For the following reasons, the Court finds federal jurisdiction over the present actions.

### I. Background: The Food, Drug and Cosmetic Act, post *United States v. Lopez*

Defendants are charged with violations of section 331(a) of the Food, Drug, and Cosmetic Act ("FDCA"), which prohibits, "[t]he introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a). As with any statute concerning the regulation of interstate commerce, Congress enacted this statute pursuant to the Commerce Clause of the United

[2] While there was a joint hearing, the above captioned cases have not been consolidated for trial.

States' Constitution, which states that, "Congress shall have the Power ... [t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." United States Constitution, Art. 1, § 8. Defendants initially contend that there is no jurisdiction under the Commerce Clause because the government has failed to allege a genuine, legitimate federal interest. Defendants rely on *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), which the Court now considers, in turn addressing both the case law before and after *Lopez*.

During the first half of the present century, the Supreme Court of the United States took an expansive view of Congress' authority under the Commerce Clause. *E.g., NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937); *United States v. Darby*, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941); *Wickard v. Filburn*, 317 U.S. 111, 121, 63 S.Ct. 82, 87 L.Ed. 122 (1942). As to the latter half of the century, this trend continued, and although it faced occasional obstacles, no significant constraints were placed upon Congress' Commerce Clause powers. *See Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 530, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), *reh'g denied* 471 U.S. 1049, 105 S.Ct. 2041, 85 L.Ed.2d 340, *cert. denied* 488 U.S. 889, 109 S.Ct. 221, 102 L.Ed.2d 212, *overruling National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). This tendency to approve any regulation promulgated under the Commerce Clause faced a sudden and abrupt stop with the Supreme Court's landmark decision in *United States v. Lopez*, 514 U.S. 549, 551, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) (declaring unconstitutional and striking down the Gun–Free School Zones Act, 18 U.S.C. § 922(q) (Supp.1996), which prohibited any unauthorized individual from possessing a gun while on the premises of a school area).

In an attempt to draw boundaries around Commerce Clause related legislation, the *Lopez* Court determined that,

"there are three broad categories of activity that Congress may regulate under its commerce power. First, Congress may regulate the use of the channels of interstate commerce .... Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities .... Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, ... *i.e.*, those activities that substantially affect interstate commerce."

*Id.* at 558–559, 115 S.Ct. 1624 (1995) (citations omitted).

However, the "substantially affecting commerce" requirement in no way alters the burden of proof that the government must carry on a jurisdictional factor within the criminal litigation context, but rather "the extent to which purely intrastate activities must impact interstate commerce before Congress may legislate under the Commerce Clause." *United States v. Cardoza*, 129 F.3d 6, 11 (1st Cir.1997) (citation omitted). Therefore,

it remains the law that where a federal criminal statute contains a jurisdictional element requiring proof that an object was "in or affecting" commerce, the government need only meet the "minimal nexus" test enunciated in *Scarborough v. United States*, 431 U.S. 563, 577, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977). *[United States v.] Blais*, 98 F.3d 647, 649 (1st Cir.1996) ("*Scarborough* is still good law after *Lopez*."), *cert. denied* 519 U.S. 1134, 117 S.Ct. 1000, 136 L.Ed.2d 879 (1997).

*Id. See also United States v. Diaz Martínez*, 71 F.3d 946, 953 (1st Cir.1995).

The FDCA clearly contains the so-called "jurisdictional element," by specifying in multiple occasions the interstate commerce

requirement. Furthermore, "[t]he *López* Court ... made it perfectly clear that, under the Commerce Clause, Congress could regulate, *inter alia*, those activities which have a consequential effect on, or which bear a meaningful relation to, interstate commerce." *United States v. Zorrilla*, 93 F.3d 7, 8 (1st Cir.1996) (citations omitted). In the present case, it is clear that there is more than a minimal nexus between the regulation of milk and the concomitant prohibition on adulterated milk that is shipped in interstate commerce.

■ Moreover, the Supreme Court has explicitly stated that the FDCA, "rests upon the constitutional power resident in Congress to regulate interstate commerce. Article 1, Sec. 8, cl. 3. To the end that the public health and safety might be advanced it seeks to keep interstate channels free from deleterious, adulterated and misbranded articles of the specified types." *United States v. Walsh*, 331 U.S. 432, 434, 67 S.Ct. 1283, 91 L.Ed. 1585 (1947). Consequently, this Court finds that the federal interest in protecting milk consumers by regulating the sale of adulterated milk entering interstate commerce is significant and sufficient to allege a legitimate federal interest.[3]

## II. Presumption of Jurisdiction: 21 U.S.C. § 379(a)

■ In support of their argument for federal jurisdiction, the government first cites 21 U.S.C. § 379(a); P.L. 105–220, amended on November 21, 1997, and effective 90 days thereafter, which provides that "the connection with interstate com-

merce required for jurisdiction in such action shall be presumed to exist."[4] However, this statutory presumption only applies to defendants who committed acts after the effective date of the amendment, or conspiracies which allegedly continued after the effective date of amendment, regardless of when they began. *Art. I § 9, Cl. 3; Miller v. Florida*, 482 U.S. 423, 429, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (criminal statutes shall not be applied retroactively). However, the Court will refrain from stating with specificity which defendants are covered by the statutory presumption and which are not, since the Court finds jurisdiction equally over all defendants based on another jurisdictional theory as set forth below.

## III. Defendants' Use of An Ingredient Shipped in Interstate Commerce

Since the statutory presumption may not apply to acts committed by certain defendants, the Court must now address the alternative jurisdictional arguments offered by the government. One such theory suggests that defendants' use of salt that had previously traveled in interstate commerce subjects even intrastate sales of milk to federal jurisdiction.[5] Defendants first counter that the government's reliance on the use of interstate salt for jurisdiction is a material variance from the charges in the indictment. Defendants highlight that the indictment charges that defendants "delivered for introduction into interstate commerce, ... adulterated food, ... namely milk which had been diluted through the addition of water and salt," and not that defendants used interstate

---

3. At the jurisdictional hearing held before this Court, defendants suggested that the amount of milk which actually left Puerto Rico to enter interstate commerce may be so small as to be *de minimis*. However, "where a general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under the statute is of no consequence." *Lopez*, 514 U.S. at 558, 115 S.Ct. 1624. Consequently, defendants' argument is unavailing.

4. The November 21, 1997 amendment added the presumption of jurisdiction to cases involving food, drugs and cosmetics. The language originally applied only to devices.

5. The government also claims that the use of containers which traveled in interstate commerce should ensure federal jurisdiction over the matter. However, merely requiring the use of an out-of-state container would open the floodgates for FDCA litigation.

salt to adulterate milk which would be sold intrastate.

■■■ A variance occurs when the facts proved at trial diverge from those alleged in the indictment. *United States v. Fisher*, 3 F.3d 456, 462–463 (1st Cir.1993). However, a variance deserves redress only if it has affected the defendant's substantial rights to be informed of the charges and to prevent a second prosecution for the same offense. *Id.* (quoting *United States v. Tormos–Vega*, 959 F.2d 1103, 1115 (1st Cir.1992)). The Court finds that the indictment sufficiently informed the defendants that they were charged with the delivery of milk adulterated through dilution with salt and water, and that there was an interstate nexus. See *United States v. Wallace*, 59 F.3d 333, 338 (2nd Cir.1995) (variance not prejudicial when indictment did not mislead defendant "as to the acts and events that were the subject of the trial."). Consequently, the slight variance between the language of the indictment and the jurisdictional theory offered by the government is immaterial.[6]

The indictment sufficient, the Court must now address the body of case law supporting the government's theory. The government points out that "[i]t has long been settled that activities which when separately considered are intrastate may become subject to the power of Congress when they have a close and substantial relation to interstate commerce." *NLRB v. Henry Levaur, Inc.*, 115 F.2d 105 (1st Cir.1940), *cert. denied* 312 U.S. 682, 61 S.Ct. 550, 85 L.Ed. 1120. To this end, the government cites civil cases which hold that "[t]he 'shipment in interstate commerce' requirement is satisfied when adulterated articles held for in-state sale contain ingredients shipped in interstate commerce." *United States v. An Article of Food*, 752 F.2d 11, 14 (1st Cir.1985) (citations omitted); *United States v. Dianovin Pharmaceuticals, Inc.*, 475 F.2d 100, 102–103 (1st Cir.), *cert. denied* 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 65 (1973); *United States v. Cassaro, Inc.*, 443 F.2d 153, 155–156 (1st Cir.1971).[7]

■■ While this argument initially appears quite compelling, a closer reading renders these cases inapposite. Each of these cases evaluated whether the court had jurisdiction based on statutory language in 21 U.S.C. sections 331(k) and 334(a)(1), which apply to adulterated food "when introduced into or while in interstate commerce or while held for sale (whether or not the first sale) *after shipment in interstate commerce.*" *An Article of Food*, 752 F.2d at 14 (emphasis added); *Dianovin Pharmaceuticals*, 475 F.2d at 103, *Cassaro*, 443 F.2d at 155–56. The statute presently before the Court, 21 U.S.C. section 331(a), only applies to "[t]he *introduction or delivery for introduction into interstate commerce* of any [adulterated] food." 21 U.S.C. § 331(a) (emphasis added). Thus, the addition of interstate salt which was held for sale in the adulterated milk does not confer jurisdiction because the statute explicitly requires "introduction

---

6. Some defendants also claim that the indictment charge, milk adulteration, is a state crime pursuant to 24 L.P.R.A. section 791, and not a federal crime. While Puerto Rico may also regulate the milk industry, defendants' argument that federal law does not cover this crime is clearly erroneous after a simple reading of the applicable federal statutes, 21 U.S.C. sections 331(a) and 333(a)(2).

7. In *An Article of Food*, the First Circuit found jurisdiction over the intrastate sale of a beverage where one of the ingredients, potassium nitrate, had been shipped in interstate commerce. The First Circuit first determined that potassium nitrate was an additive, not for purposes of satisfying the 'shipment in interstate commerce' requirement, but in order to determine if the beverage had been adulterated. Since the present case relies on 21 U.S.C. § 342(b)(4), that the food is adulterated because a substance has been added to the food so as to increase the bulk or reduce its quality, and not 21 U.S.C. § 342(a)(2)(C), which requires the inclusion of an unsafe food additive, whether salt is a food additive is irrelevant to a determination of jurisdiction.

into interstate commerce" only *after* adulteration. See *Cassaro,* 443 F.2d at 155 (legislative history reveals § 331(k) was specifically designed to protect channels of interstate commerce anywhere in the commerce chain: before, during or after shipment in interstate commerce.). Consequently, the government's reliance on the addition of salt to the milk is unavailing.

## IV. Defendants' Delivery of Milk For Introduction Into Interstate Commerce

The government's third jurisdictional argument alleges that since defendants knew that some of the adulterated milk would be delivered to the interstate market, they effectively introduced adulterated food for delivery into interstate commerce. In order to advance public health and safety, the Federal Food, Drug, and Cosmetic Act prohibits not only the introduction into interstate commerce of adulterated articles but also the delivery thereof for introduction into commerce. 21 U.S.C. § 331(a). Section 331(a) is part of an overall scheme to "protect the interstate flow of goods from the moment of introduction [or delivery for introduction] into interstate commerce until the moment of delivery to the ultimate consumer." *United States v. Beech–Nut Nutrition Corp.,* 659 F.Supp. 1487, 1494 n. 8 (E.D.N.Y.1987) (citing *United States v. Sullivan,* 332 U.S. 689, 696, 68 S.Ct. 331, 92 L.Ed. 297 (1948)). Responsibility under this section is shared by all who participate in "furtherance of the transaction which the statute outlaws, namely, to put into the stream of interstate commerce adulterated or misbranded [products]." *United States v. Mitcheltree,* 940 F.2d 1329, 1349 (10th Cir.1991) (citing *United States v. Abbott Laboratories,* 505 F.2d 565, 573 (4th Cir.1974)).

■ 21 U.S.C. section 333(a)(2) provides that "if any person commits such a violation after conviction of him under this section has become final, or commits such a violation with the intent to defraud or mislead, such person shall be imprisoned for not more than three years or fined not more than $10,000, or both." 21 U.S.C.

§ 333(a)(2). The "intent to defraud or mislead" element is met upon a showing of proof that the defendant intended to defraud or mislead a government enforcement agency. *See, e.g., United States v. Arlen,* 947 F.2d 139 (5th Cir.1991); *United States v. Cambra,* 933 F.2d 752 (9th Cir. 1991); *United States v. Bradshaw,* 840 F.2d 871 (11th Cir.1988).

■ Thus, defendants need not have directly delivered the milk to intrastate purchasers. It is sufficient that defendants delivered the milk to a purchaser who they knew or intended would subsequently introduce the adulterated milk into the interstate market. "Where the seller has knowledge that the purchaser intends to introduce the device [or food] into interstate commerce by taking it into another state," the seller has violated 21 U.S.C. section 331(a). *Drown v. United States,* 198 F.2d 999, 1004 (9th Cir.), *cert. denied* 344 U.S. 920, 73 S.Ct. 385, 97 L.Ed. 709 (1953) (sale made within the state constituted delivery for introduction into interstate commerce under section 331(a), where buyer was known by seller to be taking device to another state.); *United States v. Sanders,* 196 F.2d 895, 898 (10th Cir.), *cert. denied* 344 U.S. 829, 73 S.Ct. 33, 97 L.Ed. 645 (1952) (section 331(a) violated where misbranded drugs were sold and delivered within state to a purchaser who seller knew was purchasing drugs for transportation in interstate commerce.); *Glaser, Kohn & Co. v. United States,* 224 F. 84 (7th Cir.1915) (violation occurred where manufacturer delivered adulterated food to wholesaler with knowledge wholesaler was engaged in interstate commerce.).

Similarly, the government proffered evidence detailing the route of milk from various dairy farms to a destination outside of Puerto Rico via an intermediary purchaser, Tres Monjitas. After initially selling the milk to Tres Monjitas, the milk passed through one or two purchasers, generally from the travel industry, ultimately arriving in other Caribbean islands, various continental states, or Fort Buchan-

an, a federal base.[8]  The government alleges that defendants knew and anticipated such interstate delivery in light of the collaborative efforts of Puerto Rican dairy farmers to attain a "Grade A" rating for their milk so that they could tap into the interstate market via the travel industry. Thus, the government alleges that defendants knowingly and willfully sold adulterated milk for its intended subsequent sale in intrastate as well as interstate markets. The Court finds that this argument is sufficient to justify the exercise of federal jurisdiction and thereby warrants the denial of defendants' motion to dismiss. Whether or not the evidence is sufficient for a conviction is a matter to be determined at trial.

### CONCLUSION

In conclusion, the Court finds that the presumption of jurisdiction pursuant to 21 U.S.C. section 379(a) applies to the cases against defendants who committed acts which continued or commenced subsequent to the effective amendment of the statute. The government's second theory of jurisdiction, relying on defendants' use of salt which had been previously shipped in interstate commerce, is unavailing because it is irrelevant for the purpose of finding jurisdiction.  However, a third argument, based on the evidence proffered by the government that defendants delivered milk to a purchaser who subsequently sold the milk in interstate commerce, is controlling. Consequently, the exercise of federal jurisdiction over the actions before the Court is warranted.

**WHEREFORE,** the Court finds jurisdiction over the instant actions, and defendants' motions to dismiss are hereby **DENIED.**

**IT IS SO ORDERED.**

---

**8.** In criminal number 98–296 before Judge Cerezo, concerning military bases, a separate ruling shall issue.